**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER MACFARLANE | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.:  4:17-CV-01827-RDP |
| | } | |
| NANCY A. BERRYHILL, | } | |
| Acting Commissioner of the | } | |
| Social Security Administration, | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer MacFarlane seeks judicial review of a final adverse decision of the Commissioner of Social Security.  The Commissioner denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB").  After careful review, the court finds that the decision of the Commissioner is due to be reversed and remanded for further consideration.

**I.      PROCEDURAL HISTORY**

Plaintiff applied for Supplemental Security Income ("SSI") benefits on August 19, 2014, alleging a disability onset date of January 9, 2014. (R. 62, 133).  The Commissioner initially denied Plaintiff's claim on October 24, 2014.  (R. 73).   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on November 10, 2014.  (R. 77).  Subsequently, the ALJ issued a decision unfavorable to Plaintiff dated February 15, 2017.  (R. 33).  On September 30, 2017, the Appeals Council declined Plaintiff's request for review (R. 1–6), making the Commissioner's decision final and properly before this court for review.  *See* 42 U.S.C. § 405(g).

## II.     FACTS

Plaintiff was born on October 4, 1972 and was 41 years old on the date of alleged disability onset. (R. 133).  She speaks English and completed high school and one year of college. (R. 169, 171).  Plaintiff alleges that migraines, high blood pressure, lumbar spondylolisthesis, and back pain limit her ability to work. (R. 63, 170).

In the fifteen years preceding Plaintiff's alleged onset disability date, Plaintiff worked as a waitress, cook, sales associate, and store cashier. (R. 54, 156–58).  In 2013, Plaintiff was let go from Family Dollar and did not return to the work force. (R. 54, 170).

After being involved in a motor vehicle accident, Plaintiff began treatment with Dr. James Beretta at the Beretta Pain Clinic on March 24, 2014.  (R. 247).  The accident reportedly exacerbated her previously-existing spondylolisthesis, most notably her neck and back pain.  (R. 247, 258).  Dr. Beretta found decreased rotation in the cervical spine, tenderness in the paraspinal musculature, increased kyphosis in the thoracic spine, and a tender lumbar spine.  (R. 247).  Dr. Beretta diagnosed Plaintiff with cervical herniated disc, cervical radiculopathy, and aggravated lumbar spondylosis.  (R. 247-48).  He prescribed Ultram and Robaxin and planned for bilateral L5-S1 transforaminal epidural steroid injection.  (*Id.*).  Plaintiff received the epidural steroid injection on April 15, 2014. (R. 247, 249).

On May 19, 2014, Plaintiff sought treatment from neurologist Dr. James White. (R. 253, 495-96).  Plaintiff reported mild to moderate neck pain and severe "unrelenting" back pain, making it impossible to participate in any activities. (R. 495).  She reported that the pain was relieved "somewhat when lying down" and that she had tried epidural injections received at the Beretta Pain Clinic which "has not helped." (*Id.*).  On examination, Dr. White found that Plaintiff had normal gait and station. (*Id.*).  Dr. White also found Plaintiff to have 1+ and symmetrical deep

tendon reflexes, a positive straight leg raising test bilaterally at 45 degrees, and no overt sensory or motor deficits. (*Id.*). Dr. White's impression was that Plaintiff was experiencing a minimally symptomatic herniated disc at C5 and a central herniated disc at LS with a grade one to two spondylolisthesis. (R. 496). Dr. White noted that Plaintiff would need surgical intervention in light of her report that the epidural injection was not effective. (*Id.*).

On April 8, 2015, almost a year after her visit with Dr. White, Plaintiff sought treatment with Dr. Brian Scholl at The Orthopedic Center. (R. 653). At that consult, Plaintiff reported that she was frustrated with the persistence of neck and back pain and that she experienced significant weight gain over the preceding two years as a result. (*Id.*). On examination, Plaintiff had range of motion of chin to chest, 45 degrees of extension, 70 degrees of rotation, and negative Spurling's and Lhermitte's tests. (*Id.*). Dr. Scholl noted that Plaintiff presented significant back pain in the lumbar spine, but had a normal gait and intact heel, toe, and tandem walking. (*Id.*). Dr. Scholl diagnosed Plaintiff with lumbar spondylolisthesis at L4-L5. (*Id.*). Dr. Scholl discussed treatment options with Plaintiff including a posterior spinal instrumented fusion and Gill laminectomy at L4-L5. (*Id.*).

About a month later, on May 7, 2015, Plaintiff returned to Dr. Scholl for an epidural injection. (R. 650). This time she reported that the last epidural shot "helped out quite a bit," but the pain returned after working in a flowerbed. (*Id.*). On examination, Dr. Scholl found that Plaintiff had 5/5 motor range from C5-C8 and L2-S1, and noted that the epidural would be repeated. (*Id.*). On July 22, 2015, Plaintiff underwent an epidural injection procedure at Crestwood Medical Center. (R. 664).

On August 6, 2015, Plaintiff returned to Dr. Scholl reporting that her back pain had improved after the last epidural injection. (R. 739). On examination, Dr. Scholl reported that

Plaintiff had 5/5 motor strength from C5-C8 and L2-S1 with normal gait, station, and coordination. (*Id.*). Dr. Scholl's treatment notes indicate that the claimant was considering surgical treatment but would continue conservative care and attempt to lose weight. (R. 739-41).

In November 2015, Plaintiff visited Premier Family Care with complaints of back pain, including the report of the sensation of "giv[ing] out" in her leg. (R. 769-72). Dr. Youngblood, the treating physician at Premier Family Care, noted spinal and paraspinal tenderness on examination. (R. 771). However, during the examination, Plaintiff reported that she was able to carry out activities of daily living. (R. 769).

On January 7, 2016, Plaintiff returned to Dr. Scholl again complaining of pain associated with her back. (R. 758). Dr. Scholl noted that Plaintiff had failed all attempts of conservative care and was "quite frustrated" with the persistence of symptoms. (*Id.*). On examination, Dr. Scholl reported that Plaintiff had 5/5 strength from C5-C8 and L2-S1 with normal gait, station, and coordination. (R. 759). Dr. Scholl developed a surgical plan with Plaintiff, proposing a Gill laminectomy with posterior spinal instrumented fusion at L5-S1. (*Id.*). Dr. Scholl required that Plaintiff get an updated MRI before surgical treatment. (*Id.*). On January 18, 2016, Plaintiff's MRI showed "bilateral L5 pars defects with mild associated grade 1 spondylolisthesis" and moderate bilateral neural foraminal stenosis. (R. 761).

Two months later, on March 9, 2016, Plaintiff underwent a Gill laminectomy of L5-S1 with posterior spinal instrumented fusion, interbody arthrodesis, and application of a biomechanical device and instrumentation at L5-S1. (R. 782–83). She had a "normal uneventful postoperative course" and was discharged the following day. (R. 783). However, on March 22, 2016, Plaintiff presented to the emergency department of Huntsville Hospital complaining of swelling, back pain, and shortness of breath. (R. 785). On examination, the emergency room

physician found that Plaintiff had an epidural fluid collection compressing the cauda equina. (R. 787). Plaintiff underwent evacuation of a hematoma/seroma, extension of laminectomy, and exploration of hematoma. (R. 788–89). Plaintiff was discharged three days later and instructed to follow up with her primary doctor and orthopedic surgeon. (R. 792-94).

On March 31, 2016, Plaintiff returned to Huntsville Hospital, complaining of back pain after her surgical treatment. (R. 916). The following day, Dr. Scholl performed an evacuation of seroma, irrigation, and debridement on the Plaintiff. (R. 887). Plaintiff was subsequently discharged on April 5, 2016. (R. 889).

Plaintiff visited Dr. Scholl on April 11, 2016. (R. 875). Dr. Scholl noted swelling all over the body and pitting edema up to above the knee. (*Id.*). However, he noted that radiographic imaging showed good positioning of implants at L5-S1 and no gross abnormalities. (*Id.*). Dr. Scholl decided to continue surgical drains and start Lasix and encouraged Plaintiff to walk on a daily basis. (R. 874, 876).

On April 21, 2016, Plaintiff again returned to Dr. Scholl and presented with swelling in her lower extremities and 2+ pitting edema despite being on Lasix. (R. 860). Dr. Scholl noted that "it is time for metal allergy testing" on suspicion of allergy to the composition of something in the implant system. (R. 859-60). He noted that "[h]opefully she is allergic to [the metals in the implant]. Then we can keep her on Benadryl and pull the screws out in six to eight weeks. If she is not allergic to metal, we are going to have a hard time explaining why she has developed bilateral lower extremity edema and all this swelling." (R. 860). Dr. Scholl aspirated another 20 cc of clear straw fluid from Plaintiff's back. (*Id.*).

On May 5, 2016 Plaintiff presented to Dr. Scholl with "significant pain in the back, and a headache." (R. 855). Dr. Scholl noted that Plaintiff was scheduled for patch testing the following

5

day and he believed it "likely [she is] going to have a metal allergy." (*Id.*). Dr. Scholl aspired 120 mL of serous fluid from her back. (*Id.*). Plaintiff returned to Dr. Scholl again on May 12, 2016 due to her "recurrent seromas." (R. 851). Dr. Scholl noted: "[a]s it turns out, she is allergic to nickel. The screw rod construct of the facet caps has 1% nickel content, and so she is likely having a reaction to the implants. … We have discussed continued conservative care. We are going to ride this out as long as we can. I only aspirated about 20 mL worth of fluid off of her today. Hopefully, this will stay away. She is continuing back on Benadryl. I will see her back in 2 months for repeat clinical evaluation. Obviously, we will see her back sooner if she develops seroma again." (*Id.*).

On June 9, 2016, Plaintiff continued to experience swelling due to the nickel in her surgical implants. (R. 920). Plaintiff complained of deep spinal pressure, and Dr. Scholl reported that the nickel allergy was causing "this problem and pain." (*Id.*). Plaintiff underwent aspiration of the fluid. (R. 921). Review of radiographic imaging at this visit showed good position of the implants at L5-S1, no evidence of hardware failure or loosening, and neutral spinal alignment. (*Id.*).

On July 14, 2016, Plaintiff returned to Dr. Scholl with complaints of deep pressure in her spine due to fluid collection. (R. 926). Dr. Scholl noted that Plaintiff had recurrent seromas from the nickel implants but decided to refrain from removing the implants until the six-month point after her surgery. (*Id.*). Plaintiff's radiographic imaging from this visit showed good positioning of the implants, no evidence of loosening or hardware failure, and progressive evidence of consolidation in her lumber spine. (R. 935). However, Dr. Scholl aspirated another 20 mL of clear liquid off of her back. (R. 921). He noted he would see the patient back in 4 weeks, and "we have given her a refill of her narcotics." (*Id.*).

On August 11, 2016, Plaintiff returned to Dr. Scholl to report an episode of swelling which caused her to gain 42 pounds of water. (R. 950). Plaintiff was prescribed steroids. (*Id.*). She reported that she was "doing better" after the round of steroids "but she is beginning to get a little bit of swelling back again." (*Id.*). Radiographic imaging performed during the August 11, 2016 visit showed good positioning of the implants at L5-S1, neutral spinal alignment, and no evidence of hardware failure or loosening. (R. 955). After examination, Plaintiff's prescriptions were refilled, including those for narcotics and acute anxiety. (R. 953).

On August 15, 2016, Plaintiff was admitted to Marshall Medical Center North due to complaints of facial swelling after prodding at a blemish. (R. 979). During her admission, Plaintiff "denie[d] any muscle weakness, joint pain or swelling, decrease range of motion, muscle spasm or back pain." (R. 980). A computed tomography (CT) scan of the lumbar spine was completed on August 16, 2016 which showed "no evidence of fracture, misalignment, or destructive osseous pathology." (R. 958). Plaintiff was treated for left facial cellulitis with significant edema and left facial pain and was discharged on August 24, 2016. (R. 981, 1001). On the day of her discharge, Plaintiff was examined and stated that "her back pain was not as bad as she thought." (R. 1001-02).

## III.    ALJ DECISION

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. Work activity may be considered substantial even if it is part-time or if the claimant does less, gets paid less, or has less responsibility than when she worked before. 20 C.F.R. § 404.1572(a). Even if no profit is realized,

7

work activity may still be considered gainful so long as it is the kind of work usually done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant is engaging in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a severe medical impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then she may not claim disability. *Id.* If the impairment is not expected to result in death, the claimant must also meet the 12-month duration requirement. 20 C.F.R. § 404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, and 404.1526. If the claimant meets or equals a listed impairment and meets the duration requirement, she will be found to be disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

If the claimant does not meet the requirements for disability under the third step, she may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work notwithstanding her impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant is unable to perform past relevant work, then the analysis moves to the fifth and final step of the analysis.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20

C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 19, 2014 and suffers from the severe impairments of obesity, degenerative joint disease, and lumbar spondylolisthesis. (R. 21). However, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25).

The ALJ determined that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 416.967(b) except the claimant would need to change posture from a seated to an upright either standing or walking posture. This would not be mechanical, but may occur as frequently as every 90 minutes. The claimant cannot walk more than a half a block (500 feet) at one time. The claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot work around hazards. The claimant can stoop and crouch occasionally. The claimant can balance, kneel, crawl, and climb ramps and stairs frequently.

(R. 26). Relying on testimony from a Vocational Expert ("VE"), the ALJ found that jobs exist in the national economy that Plaintiff can perform, including cashier and parking-lot attendant. (R. 32). Accordingly, the ALJ determined that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*).

## IV. PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

Plaintiff argues that the ALJ failed to properly evaluate the credibility of her complaints of pain consistent with the Eleventh Circuit pain standard and failed to articulate reasons for declining to credit Plaintiff's pain testimony. (Pl.'s Br., Doc. #11 at 4). For the reasons contained herein, the court agrees.

## V.    STANDARD OF REVIEW

The only relevant questions for this Court to decide are whether the record contains substantial evidence to support the ALJ's decision, *see* 42 U.S.C. § 405; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 92 F.2d 129, 131 (11th Cir. 1990). Under  42 U.S.C. § 405(g), the Commissioner of Social Security's findings are conclusive so long as they are supported by "substantial evidence."  The district court may not reconsider the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The reviewing court must review the record in its entirety to determine whether the decision reached is reasonable and supported by substantial evidence. *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* It is relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).  Even if the evidence preponderates against the Commissioner's findings, the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. *Id.*  Despite the limited review of the ALJ's findings, review does not automatically prompt the court to affirm. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI.    DISCUSSION

For the reasons discussed below, the court finds that the decision of the Commissioner is due to be reversed and remanded.

Plaintiff argues that the ALJ did not make a proper credibility assessment in evaluating subjective complaints of disabling symptoms.  It is axiomatic that Plaintiff bears the burden of

establishing that she is disabled. *Green v. SSA*, 223 Fed. Appx. 915, 923 (11th Cir. 2007). In the context of this case, Plaintiff must satisfy the pain standard test adopted by the Eleventh Circuit by showing "(1) evidence of an underlying medical condition; and (2) either objective medical evidence confirming the severity of the alleged pain or (3) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that Plaintiff has a medically determinable impairment that could reasonably expected to produce her pain, he must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit her capacity to work. 20 C.F.R. § 404.1529(c)(1). The ALJ should consider all available evidence in making this determination.

During this assessment, the ALJ is to consider Plaintiff's testimony and any inconsistency between the testimony of symptoms and any other evidence. 20 C.F.R. § 404.1529(c)(3)-(4), 416.929(c)(3)-(4). If the ALJ rejects Plaintiff's testimony regarding pain, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Further, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The reasons for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 2007). Thus, although the ALJ's "credibility determination does not need to cite 'particular phrases or formulations,' ... it cannot merely be a broad rejection which is not enough to enable the district court ... to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

In this case, the ALJ correctly articulated the pain standard. (R. 26-27). After determining that evidence exists regarding an underlying medical condition, the ALJ analyzed the intensity, persistence, and functional limiting effects of the symptoms. (R. 26-31). The ALJ found that the objective medical evidence did not support the severity of Plaintiff's alleged pain and concluded that the statements of Plaintiff regarding her ability to perform work related activities were not entirely credible. (R. 27-31).

First, the ALJ found that the medical evidence generally does not support the alleged loss of functioning. (R. 27). In making that finding, the ALJ cited Plaintiff's positive response to conservative treatment including epidural injections, good positioning of the implants at L5-S1 after surgery, neural spine alignment, and no evidence of hardware failure or loosening. (R. 27, 31). However, after citing these specific aspects of the record, the ALJ inventoried much of the record evidence before him. That medical evidence substantially undermines the ALJ's earlier conclusion. *See Iheanacho v. Berryhill*, 2018 WL 4680173 at * 4 (N.D. Ala. Sept. 28, 2018) ("The court recognizes the logic in the ALJ's analysis, but the analysis omits objective medical evidence that supports [plaintiff's] description of her pain.").

For example, the ALJ noted that Plaintiff had a positive response to one epidural injection. (R. 27). But, the ALJ failed to reconcile frequent doctor's notes indicating that although some initial response to epidural was positive, Plaintiff's back pain continued to worsen over time until she was at her "wit's end" and surgical treatment was decided upon. (R. 653, 758, 783). The ALJ also failed to acknowledge (or properly assess) that the epidural injections provided only temporary relief, and overlooked the fact that Plaintiff continued to seek treatment for "worsening or not resolving symptoms" for six months after the epidural injections. (R. 769-71). *See Chambers v. Astrue*, 671 F. Supp.2d 1253, 1258 (N.D. Ala. 2009) (finding that an ALJ "cannot

12

pick and choose among a doctor's records to support his own conclusions"); *see also* Social Security Regulation 16-3p (requiring an ALJ to consider the persistence of a plaintiff's symptoms).

The ALJ noted the good positioning of the implants (R. 27), but failed to reconcile the substantial evidence of Plaintiff's allergic reaction to them. It was determined that the reaction resulted in deep pressure in the spine requiring prescriptions for narcotics and anxiety. (R. 950-55). Within weeks of her surgery, Plaintiff visited the Emergency Department due to a "large fluid collection" in her lower back causing burning in her legs and feet. (R. 788). The swelling did not subside after that visit, and Plaintiff continuously returned to her physician for frequent draining of the fluid. (R. 855, 851, 920, 921, 925, 941). At one point, Plaintiff had gained 42 pounds from fluid collection, causing deep pressure and pain in her spine. (R. 53, 950). The ALJ did not properly assess these conditions.

Of course, it is improper for an ALJ to reject a plaintiff's statements about the intensity and persistence of her pain based on the objective medical evidence alone. 20 C.F.R. § 404.1529(c)(2); *Foote*, 67 F.3d at 1561 (concluding that "pain alone can be disabling, even when its existence is unsupported by objective evidence"). Here, the ALJ clearly sets out Plaintiff's stated limitations due to pain. (R. 27). He acknowledged that Plaintiff testified that she "cannot function" due to pain, she does not drive due to loss of feeling in her legs, she cannot walk around a grocery store or push a buggy, she cannot stand for more than 10-15 minutes, and swelling causes trouble with breathing and additional pain in her legs. (R. 27). But the ALJ then summarily discredited Plaintiff's testimony based upon limited objective medical evidence showing "response to conservative treatment" and, after surgery, "good position of the implants." (R. 27). In doing so, he failed to deal with the substantial evidence in the record, including addressing Plaintiff's testimony of pain and substantial medical evidence indicating she experienced increased pain with

prolonged sitting and standing (R. 247), "severe and unrelenting" back pain (R. 495), an inability to participate in any activities (R. 495), failure to respond well to epidural injections (R. 496), and gaining a significant amount of weight (some 60 pounds in two years) because of back pain. (R. 653). He also did not make sufficient findings about Plaintiff's (and her physician's) preference early on in her treatment to undertake conservative care and the increasing problems and ultimate failure of those plans, (R. 758), her frustration with the persistence of symptoms (R. 758), hospitalizations for persistent back pain after surgery (R. 785, 887), and the deep pressure in the spine she experienced due to recurrent seroma (R. 851, 855).

Having considered the ALJ's opinion and all evidence presented, the court finds that the ALJ's decision to discredit Plaintiff's allegations regarding her pain and her limitations was not based on substantial evidence in the record. Instead, it is a "broad rejection" that ignored the full context of Plaintiff's testimony and the medical evidence. Accordingly, the matter is due to be remanded for further consideration.

## VII.      CONCLUSION

The court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence and the proper legal standards were not applied in reaching this determination. The Commissioner's final decision is therefore due to be reversed and remanded. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this December 12, 2018.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE